## In re KANSAS CITY JOURNAL–POST CO.

### BOSTIAN v. ROSEN.

No. 12792.

Circuit Court of Appeals, Eighth Circuit.

Aug. 11, 1944.

---

Samuel W. Sawyer, of Kansas City, Mo. (A. J. Granoff and Claude A. Ferguson, both of Kansas City, Mo., on the brief), for appellant.

R. B. Caldwell, of Kansas City, Mo. (John W. Oliver, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The trustee sought to compel Morton H. Rosen to turn over a certificate for 50 shares of capital stock in The KCMO Broadcasting Company, as part of the assets of the Kansas City Journal-Post Company, bankrupt. Rosen consented to a determination of the merits in summary proceedings. The referee, on hearing, entered a turnover order. The District Court reversed, 51 F.Supp. 1009, 1020.

The controlling question is whether the stock was covered by the deed of trust involved in No. 12,791, In re Kansas City Journal-Post Co. (Bostian v. Schapiro), 8 Cir., 144 F.2d 791, decided concurrently herewith, and in the light of Rosen's possession of it. Rosen alleged in his response that the stock was within the lien of the deed of trust; that title to it had become vested in Morris Schapiro by virtue of Schapiro's purchase of all the lien property at a foreclosure sale under the indenture; and that he was simply holding the certificate as agent and attorney for Schapiro.[1] The referee found that the deed of trust did not cover the stock, and that Schapiro therefore had not acquired title to it through the foreclosure sale. The District Court appears, from a reading of its memorandum in connection with its opinion in No. 12,791, 51 F.Supp. at page 1016, to have been of the view that the description in the deed of trust was sufficiently definite of itself to cover the stock.[2]

The KCMO stock was property acquired by the mortgagor after the deed of trust was given. It was not a replacement of any of the original lien property under the substitution clause of the indenture. It was not specifically mentioned in the instrument. It was not within any of the special kinds or classes of property listed in the description. It was not shown to have any necessary or useful relationship or incidence to the publication of the Journal-Post, to the maintenance of the newspaper plant, or to the use of the property covered by definite description, and hence could not possibly constitute an appurtenance.[3] It does not even appear that the certificate ever was kept or located in the mortgaged plant.[4]

The only language in the deed of trust

---

[1] The certificate was one issued in the name of O. S. McPherson and assigned by McPherson in blank. No formal transfer thereof had apparently been made on the records of the Broadcasting Company.

[2] Rosen argues in his brief that the sufficiency of the description to cover the stock should not be considered here, because "the * * * attack * * * comes for the first time in this Court." Rosen's response sought to rest Schapiro's title to the stock upon the sufficiency of the description in the deed of trust to cover it as part of the property purchased at the foreclosure sale. The referee made a specific finding that the stock was not so covered by the description. Rosen alleged in his petition for review that the referee's finding was erroneous, because "the stock was covered by the Trust Indenture". In this situation there manifestly is no merit in the contention that the question is for the first time being injected into the case in this court, and we pass it without further discussion.

[3] Cf. Humphreys v. McKissock, 140 U.S. 304, 11 S.Ct. 779, 35 L.Ed. 473; Guarantee Trust Co. of New York v. Minneapolis & St. L. R. Co., 8 Cir., 36 F.2d 747, 752, certiorari denied 281 U.S. 756, 50 S. Ct. 407, 74 L.Ed. 1166; Cleveland Trust Co. v. Consolidated Gas, Electric Light & Power Co., 4 Cir., 55 F.2d 211, 214; Jackman v. St. Louis & H. R. Co., 304 Mo. 319, 263 S.W. 230, appeal dismissed 268 U.S. 682, 45 S.Ct. 641, 69 L.Ed. 1155. For a distinguishable situation see Guaranty Trust Co. of New York v. Atlantic Coast Electric R. Co., 3 Cir., 138 F. 517, 525, 526.

[4] Some of the evidence in the record tends to suggest that, as a matter of fact, the parties had previously treated the stock as not being part of the lien property. Schapiro in his testimony on the witness stand floundered around on whether he was claiming the stock under the foreclosure or by direct title out of the deal in which he acquired the deed of trust and other securities. Rosen acquired posses-

that can at all be claimed to have any application to the stock is the provision, "Also all property of every name and nature, real, personal or mixed wheresoever situated and any and all beneficial interest therein and thereto, which the Company may at the present time own or at any time hereafter own or acquire"; or the provision, "Also all other rights (and) * * * interests * * * of every description now owned or which may hereafter be acquired or owned by the Company"; or the provision, "The specific description or enumeration herein of the properties of the Company shall not be construed as limiting the scope and intent of the lien of this Indenture which is intended to cover all property, real and personal, and all rights and interest therein and every other right and interest which the Company now has and may hereafter acquire."

But these provisions by themselves are simply attempts to mortgage property in gross, without limitation as to kind or location. The general rule is that a mortgage of after-acquired property of every kind and class, no matter where located, is not sufficient alone to create a lien as against other creditors. 40 Harvard Law Review 222, 228; 1 Jones, Chattel Mortgages and Conditional Sales, Bowers' Edition, § 70. At least, a general mortgage of after-acquired property will not ordinarily be effective against creditors as to after-acquired property that is not of a kind or class enumerated in the mortgage, or that is not an appurtenance to some existing property covered by the mortgage, or that is not made to have a definite and appropriative location, such as in a certain building, under the terms of the mortgage. Cf. State of Alabama v. Montague, 117 U. S. 602, 609-611, 6 S.Ct. 911, 29 L.Ed. 1000; American S. S. Co. v. Wickwire Spencer

Steel Co., D.C.W.D.N.Y., 42 F.2d 886, 893, affirmed 2 Cir., 49 F.2d 766; Morrill v. Noyes, 56 Me. 458, 466-468, 96 Am.Dec. 486; Ferguson v. Wilson, 122 Mich. 97, 80 N.W. 1006, 1007, 80 Am.St.Rep. 543; Fidelity & Deposit Co. of Maryland v. B. F. Sturtevant Co., 86 Miss. 509, 38 So. 783, 784-786, 109 Am.St.Rep. 716; Packwood v. William Atkinson & Foxworth Co., 79 Miss. 646, 31 So. 337, quoting from Mississippi Valley Co. v. Chicago, St. L. & N. O. R. Co., 58 Miss. 896, 904, 38 Am.Rep. 348; Dorman v. Crooks State Bank, 55 S.D. 209, 225 N.W. 661, 668, 64 A.L.R. 614; Farmers' & Merchants' Bank v. Stockdale, 121 Iowa 748, 96 N.W. 732, 733.

Missouri appears to recognize this general rule. In Wright v. Bircher's Ex'r, 72 Mo. 179, 186, 37 Am.Rep. 433, the court referred to Morrill v. Noyes, 56 Me. 458, 96 Am.Dec. 486, cited above, and declared: "The opinion of the court * * * is an able review of the authorities, and states the doctrine more clearly and precisely than any other case to which our attention has been called. It does not recognize the validity of mortgages of mere contingencies, or sales or mortgages of property which 'the mortgagors might purchase, if they should purchase any,' but the sale or mortgage must relate to property then in the contemplation of the parties to be purchased or acquired by the vendor or mortgagor." In Rutherford v. Stewart, 79 Mo. 216, 217, 218, the court again cited Morrill v. Noyes and stated that in Wright v. Bircher's Ex'r, supra, "this court approved what was said * * * by Davis, J., in Morrill v. Noyes." In Vrooman v. Burdett, 336 Mo. 1181, 83 S.W.2d 95, 97, the court similarly quoted from Mississippi Valley Co. v. Chicago, St. L. & N. O. R. Co., 58 Miss. 896, 38 Am.Rep. 348, also cited above, that "neither a man nor a corporation can, by general terms only,

---

sion of the certificate several months before the foreclosure and took it from Kansas City to Baltimore. He did not state on what basis possession had been given to him. It does not appear that the certificate was returned to Kansas City at the time of the foreclosure. The stock was in no way mentioned between Rosen and the indenture trustee in connection with the foreclosure proceeding. In discussing the foreclosure with the indenture trustee, Rosen had prepared an itemized schedule of the property which was to be sold, and the officer of the indenture trustee who was handling the matter testified that he did not recall seeing the stock listed in this

schedule. The copy of that part of the schedule which Rosen had left with the indenture trustee made no reference to the stock. The president of the newspaper corporation, who admitted that he had an interest in the general transaction by which Schapiro acquired the deed of trust (but not in the deed of trust itself) testified that he had turned the stock over to Rosen, but his testimony was not unequivocal as to why this had been done, nor does it appear that he had any authority from the board of directors to surrender possession of the certificate to Rosen or Schapiro.

mortgage—so far as subsequent purchasers and creditors are concerned—everything that it may thereafter acquire, through all time; for this would be a mere pledge of its capacity of acquisition, and would afford no sort of indication of what was to pass under the instrument." Keating v. Hannenkamp, 100 Mo. 161, 13 S.W. 89, cited by Rosen, is in harmony and not in conflict with the rule as stated above, for there the mortgage covered all the furniture then owned or afterwards acquired, which should be placed in a certain building. A similar situation obtained also in Barton v. Sitlington, 128 Mo. 164, 30 S.W. 514, 516.

Rosen contends, however, that if the after-acquired property provisions were too general and indefinite of themselves to cover the KCMO stock as against other creditors, the infirmity was cured and Schapiro's lien became effective on the stock, when Rosen acquired possession of the certificate. It appears to be the rule in Missouri that, except where actual fraud is involved, defects as to other creditors in a chattel mortgage, which is valid between the parties, become cured when the lien property comes into the lawful possession of the mortgagee before the rights of other creditors have attached to it. See State, to Use of Mayer v. O'Neill, 151 Mo. 67, 52 S.W. 240, 246; Barton v. Sitlington, 128 Mo. 164, 30 S.W. 514, 516; Mallmann v. Harris Bros., 65 Mo.App. 127; Halderman v. Stillington, 63 Mo.App. 212, 220; Koppelman Furniture Co. v. Fricke, 39 Mo.App. 146; Moser v. Claes, 23 Mo. App. 420; Wood & Co. v. Hall, 23 Mo.App. 110. See also section 3486, Mo.Rev.St.1939, Mo.R.S.A. § 3486.

The trustee argues that this rule has no application where, as here, the mortgage does not contain a provision authorizing the mortgagee to take possession. We find nothing in the Missouri decisions to suggest that the parties cannot mutually effectuate their previous general intention under the mortgage to create a lien, by a voluntary delivery of the property to the mortgagee for that purpose before any rights of other creditors have attached to it, regardless of whether the mortgage does or does not contain a clause for the taking of possession by the mortgagee, if the language of the mortgage is broad enough generally to cover the property as between the parties, and if the possession actually is to constitute an absolute holding under the lien of the mortgage, and if no actual fraud is involved in the acts of the parties.[5] It is the lawful holding of the property as security under the mortgage which gives effect to the lien, and not the mortgagee's act in taking possession. Thus, in Wood & Co. v. Hall, 23 Mo.App. 110, 118, the court said: "The result would have been the same had the mortgagee, with the consent of the mortgagor, taken possession of the mortgaged goods at any time before a creditor of, or purchaser from, the mortgagor had acquired rights to the stock of goods." But, as we have intimated, the possession of the mortgagee must be an absolute holding in furtherance of the lien of the mortgage and not for some other purpose. If it is intended to be a mere custody or holding for the use of the mortgagor, it is, of course, not a lawful possession as against the rights of other creditors, under section 3506, Mo.Rev.St.1939, Mo. R.S.A. § 3506, and it does not effectuate the mortgagee's rights under a general description clause, such as is here involved.

Neither the referee nor the District Court have made any express finding on whether Rosen's possession of the stock was by mutual intention and agreement a possession in furtherance of Schapiro's rights under the mortgage or for some other purpose, and there is no indication in the memorandum opinion of either, of the extent to which this question was considered or that it was at all considered. Were the evidence such as legally to permit of only one finding, we would be entitled to dispose of the question here, but it is not.

Rosen claimed, of course, on the hearing that he had held possession of the stock under Schapiro's mortgage rights, but he did not explain how or on what basis he had come into possession of the certificate at the time. Newman, president of the bankrupt corporation, who had a personal interest in the transaction by which Schapiro acquired the deed of trust, though not in the deed of trust itself, admitted that he had turned the stock over to Rosen, but

---

[5] Whether Rosen's possession and the effectuation thereby of a lien on the stock within four months before the filing of the bankruptcy petition, if his possession was in mutual furtherance of the mortgage, would constitute a voidable preference in favor of Schapiro under section 60, subs. a and b of the Bankruptcy Act, 11 U.S. C.A. § 96, subs. a and b is, of course, not before us here.

his testimony is subject to some inference that he merely turned the certificate over "for safekeeping." There was no showing that Newman had any authority from the board of directors to surrender control of the certificate to Schapiro, and there is some evidence to suggest that Schapiro still at that time was the sole stockholder of the bankrupt corporation, for such significance as that fact might have in relation to his legal or actual chargeability with knowledge of Newman's lack of authority, and to his own right to accept the stock in the circumstances. Again, some of Rosen's actions in relation to the foreclosure, which we have referred to in footnote 4, supra, suggest that Rosen had not treated the certificate as being part of the lien property, and that he therefore did not regard his possession as being under the mortgage and was not holding the stock for that purpose.

There may be other circumstances in the record which bear one way or the other upon the question. What we have set out is sufficient to indicate that on the facts and circumstances the issue should be made the subject of specific resolution and finding. The order of the District Court will accordingly be reversed and the cause remanded for the purpose of allowing the District Court, or the referee, as the District Court may elect, to make a specific finding on whether Rosen's possession of the certificate was by mutual intent and agreement one in effectuation of Schapiro's mortgage rights, or whether it was for some other purpose, and to enter judgment herein on the basis of that finding. What we have said in this opinion is dispositive of all other questions.

Reversed and remanded with directions.